IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERICA V.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 1106 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, about three years ago in August of 2017. (Administrative Record (R.) 162-64). She claimed that he became disabled as of October 28, 2016, due to depression, iron deficiency, and chronic fatigue. (R. 162, 193 ). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on February 14, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on April 19, 2020. [Dkt. #7]. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff was born on February 27, 1979, and so was just 37 at the time she claims she could never work again. (R. 182). She has a high school education. (R. 194). Plaintiff has a fairly solid work record from 1994 to 2017, with a period of unemployment from 2010 through 2012. (R.165-66). She worked as a personal banker from 2003 to 2009, and then in wireless retail sales from 2013 to 2018. (R. 194).

The medical record in this case is not terribly large, as these cases go, only about 500 pages. (R. 240-749). As generally the case in these proceedings, very little of it is relevant to plaintiff's motion to overturn the ALJ's decision; indeed, the plaintiff cites to only a single page of the medical record, hemoglobin levels in March and June of 2018. [Dkt. #16, at 8 (citing R. 630)]. As such, the summary of the medical record will be brief and, for the most part, those files will be referenced only insofar as is necessary to address the parties' arguments.

Plaintiff suffers from anemia. Doctors started her on oral iron supplements on November 1, 2016, in response to abnormally low hemoglobin at 8.7 grams per deciliter (g/dL) (R. 264-65). On November 5, 2016, plaintiff was noted to be pale. Examination was normal however, and she was in distress and able to move her extremities easily. (R. 264). January 2017 and March 2017 bloodwork results also show showed abnormally low hemoglobin levels. (R. 546; 739). But, her February 2017 and May 2017 physical examinations were unremarkable (R. 529, 532).

On March 13, 2018, plaintiff had a consultative examination with Dr. Liana G. Palacci, in connection with her application for benefits. She complained of fatigue and mild shortness of breath with exertion. She said she took liquid iron once a day. She had not had any iron infusions or blood

transfusions. She was able to perform all of her activities of daily living. March 2018, however, again showed plaintiff's hemoglobin was low: 5.8 grams per deciliter. (R. 583).

On June 26, 2018, the plaintiff had to go to the emergency department for severe anemia. She had been experiencing increased fatigue and shortness of breath on exertion. (R. 601). While her physical examination signs were unremarkable, her bloodwork showed a hemoglobin of 6 g/dL (Ex. 595, 599, 601, 603).[2] The claimant underwent a blood transfusion and received intravenous (IV) iron replacement. (R. 601). She was discharged to home in stable condition the same day.

Plaintiff followed up with Dr. Kim on July 10, 2018. Her physical examination signs were normal. Dr. Kim adjusted the claimant's medications and asked her to follow up in three months to recheck her labs (R. 626). At her October 2018 hearing, the plaintiff said her next medical visit would be to update her blood work.

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had a severe impairment: iron deficiency/anemia. (R. 15). The ALJ discussed plaintiff's non-severe impairments, finding that her psychological impairments of ADHD, depression, and anxiety caused no more than mild limitations in her ability to function. (R. 16-17). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listing 7.05 for anemia. (R.18).

---

[2] Plaintiff suggests her hemoglobin level was trending down from previous readings, but it was slightly up at 6 g/dL. It appears plaintiff was referencing a hemoglobin A1C reading (R. 630), a different test.

3

The ALJ then determined that plaintiff could perform light work, except that she would be off-task up to 15% of the workday, and could not climb ladders, ropes, or scaffolds; and could not work around unprotected heights or in extreme cold. (R. 18). The ALJ went on to summarize the plaintiff's claims and allegations, and the medical record. The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 19). The ALJ discussed the opinions from the state agency reviewing doctors. He gave the opinion of Dr. Nimmigadda, who found plaintiff capable of medium work, some weight. The ALJ noted that the doctor had not reviewed the most recent evidence of plaintiff requiring a blood transfusion and had not examined the plaintiff. As such, the ALJ felt plaintiff was more restricted and limited to light work. (R. 20). The ALJ also discussed the opinion of the reviewing psychologist, Dr. Taylor, and accorded it no more than little weight due to the fact that the doctor had not reviewed hearing level evidence and had not examined plaintiff. (R. 20).

Next, the ALJ, relying on the testimony of the vocational expert, found that, given her residual functional capacity, the plaintiff could perform her past work as a retail sales person (DOT 279.357-054; semi-skilled with ai1 SVP of 3; light in exertion as generally performed and as actually performed); and as a financial planner (DOT 250.257-014; killed with an SVP of8; sedentary in exertion as generally performed and as actually performed). (R. 21). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 22).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must

uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

The substantial evidence standard is a low hurdle to negotiate, *Biestek*, 139 S. Ct. at 1154, but, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result in order to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier

5

of fact do not build an accurate and logical bridge between the evidence and the result."). The subjectivity of the requirement – one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare – makes it difficult for ALJs to craft acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

The plaintiff's single argument in support of her motion to overturn the ALJ's decision concerns the ALJ's consideration whether she met or equaled the listings at step three. Plaintiff concedes that her medical records do not demonstrate that her condition meets the listings for anemia [Dkt. #16, at 7], but she contends that the ALJ offered only a perfunctory analysis of her anemia and blood chemistry work in terms of whether her condition *equaled* the Listings. The plaintiff further contends that the ALJ ought to have submitted the complicated medical question to an expert.[3]

At step three, the ALJ must determine whether the claimant's impairments are "severe enough" to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary. 20 C.F.R.

---

[3]Any other arguments the plaintiff could have presented are deemed waived. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020)(". . . arguments omitted before the district court are [waived]"); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013)(arguments not raised in district court are waived); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *see also Jaxson v. Saul*, 970 F.3d 775, 778 (7th Cir. 2020)(district court did not abuse discretion deeming inadequately developed argument forfeited).

§ 404.1525(a); *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). An impairment is presumptively disabling if it is listed in the relevant regulations' appendix, see 20 C.F.R. § 404.1525(a), or if it is "medically equivalent" to a listing. 20 C.F.R. §404.1526(a); *Jeske*, 955 F.3d at 588. A medically-equivalent impairment has characteristics "at least of equal medical significance" to all the specified criteria in a listing. 20 C.F.R. § 404.1526(b); *Jeske*, 955 F.3d at 588. When evaluating whether an impairment is presumptively disabling under a listing, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Jeske*, 955 F.3d at 588.

The pertinent listing here – Listing 7.05(c) – requires uncontrolled anemia as characterized by "Hemoglobin measurements of 7.0 grams per deciliter (g/dL) or less, occurring at least three times within a 12-month period with at least 30 days between measurements." The ALJ set out his step three finding as follows:

> Although the claimant has the severe impairments listed above the impairment or combination of impairments, do not meet or medically equal the specific criteria for any impairment listed in 20 CFR Prt 404, Subpart P, Appendix 1. The claimant's anemia does not satisfy section 7.05. In particular, the claimant has not experienced multiple painful vaso-occlusive crises since October 2016. She has not required at least three hospitalizations within a 12-month period. She has not had hemoglobin measurement of 7.0 gram per deciliter or less at least three time within a 12-month period with at least 30 days between measurements. She has not been diagnosed with beta thalassemia major.

(R. 18). Granted, the ALJ did not say much, but there was not much to say. The listing requires three qualifying tests; plaintiff presents only two. There was no need for some convoluted, intricate analysis. *Compare Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015)("Beyond these two sentences, she provided no analysis whatsoever supporting her conclusion.").

As for equivalence, the ALJ did all that was required of him. Two out of three doesn't necessarily do it for equivalence. The regulations require plaintiff to identify "other findings related to your impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1)(ii). There must be findings in the administrative record related to the impairment that are at least of equal medical significance to the required criteria. Social Security ruling ("SSR") 17-2p. "To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following: 1. A prior administrative medical finding from an MC or PC from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or 2. ME evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or 3. A report from the AC's medical support staff supporting the medical equivalence finding.". Plaintiff does not point to any such evidence here, and it is her burden to do so.[4] *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, . . . ."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987)("It is not unreasonable to require the claimant, who is in a better position to provide information about his

---

[4] As such, this case is unlike the situation in *McHenry v. Berryhill.* 911 F.3d 866 (7th Cir. 2018), cited by plaintiff, where there was a medical opinion in the record that the claimant met the listing at issue.

8

own medical condition, to do so.").

Moreover, the ALJ's discussion of medical equivalence in this regard was more than adequate. Under Social Security Ruling ("SSR")17-2p which, effective March 2017, governs this case, and is binding on ALJs, *see McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011):

> if an adjudicator at the hearings or ATTORNEY-CLIENT [Appeals Council] level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2p, 2017 WL 3928306, at *4; *see also Ellen B. v. Saul*, 2020 WL 1912228, at *4 (N.D. Ill. 2020). In addition, as in *Jeske* the ALJ's discussion of the effects of plaintiff's impairment "picked up in the next part of the ALJ's decision. There, the ALJ addressed specific evidence of [plaintiff's] symptoms and explained why he found [plaintiff's] statements about her symptoms were not fully substantiated by the other evidence, which showed her symptoms were less severe." *Jeske*, 955 F.3d at 589.

Furthermore, the plaintiff's argument that the ALJ was obligated to consult a medical expert on the question of medical equivalence is not correct. Since SSR 17-2p went into effect in March of 2017, ALJs are not required "to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 WL 3928306, at *4; *see also Lisa S. v. Saul*, 2020 WL 5297028, at *8 (N.D. Ill. 2020); *Zieroth v. Saul*, 2020 WL 3490235, at *3 (N.D. Ind. 2020); *Willis v. Comm'r of Social*

*Security Admin.*, 2020 WL 1934932, at *4 (E.D. Mich. 2020); *Marvin v. Comm. of Social Security*, 2018 WL 4214339, at *3, n.3 (W.D.Mich. 2018).

As for possibly securing an additional iron level test, although ALJs bear some responsibility for developing the administrative record, *see Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir.2009); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), they are also free to assume – as is the reviewing court – that a claimant represented by counsel has presented her strongest case for benefits. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir.2007). Plaintiff, represented by counsel since August of 2017 (R. 90-92, 156-57), knew at least six months before her hearing that the state-agency consultants did not think she was disabled or that she met or equaled the listing for anemia. (R. 68-69, 84). Yet, counsel never presented an opinion on medical equivalence from those who treated plaintiff or additional hemoglobin level studies. "The appropriate inference is that [plaintiff] decided that another expert opinion [or hemoglobin level study] would not help her." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to remand this case [Dkt. #16] is denied, and the defendant's motion for summary judgment [Dkt. # 19] is granted, and the Commissioner's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/30/20

10